## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DEBORAH FLOYD, Individually and on Behalf of all Others Similarly Situated,** | |
| **Plaintiff,** | **Case No. 21-cv-525-SPM** |
| **v.** | |
| **PEPPERIDGE FARM, INCORPORATED,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

## McGLYNN, District Judge:

Pending before the Court is a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendant Pepperidge Farm, Incorporated ("Pepperidge Farm"). For the reasons set forth below, the Court **GRANTS** the Motion to Dismiss in its entirety.

### FACTUAL BACKGROUND

The following facts are taken from plaintiff Deborah Floyd's ("Floyd") complaint (Doc. 1) and are accepted as true for purposes of Pepperidge Farm's motion to dismiss. FED. R. CIV. P. 10(c); *Arnett v. Webster,* 658 F.3d 742, 751-52 (7th Cir. 2011).

Floyd resides in Maryville, Illinois (¶ 36). Pepperidge Farms is the manufacturer, distributer, marketer, labeler and seller of Golden Butter [Crackers]

("crackers") (¶ 1). Floyd reproduced in her complaint the following copy of the cracker box:



Floyd also reproduced the following ingredient list of the crackers in her complaint:

**MADE FROM:** ENRICHED WHEAT FLOUR (FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), BUTTER (MILK), VEGETABLE OILS (CANOLA, SUNFLOWER AND/OR SOYBEAN), SUGAR, INVERT SYRUP, CONTAINS 2% OR LESS OF: SALT, MALTED BARLEY FLOUR, BAKING SODA, MONOCALCIUM PHOSPHATE.

Butter is second on the ingredient list, behind enriched wheat flour, but the claims are concerned with the presence of the third ingredient – vegetable oils.

Floyd purchased the crackers on at least one occasion at Schnucks, 2222 Troy Road, Edwardsville, Illinois during 2019 and 2020 because "she wanted to consume a cracker which contained more butter than it did" and "did not contain butter substitutes where butter could be used" (¶¶ 41, 42). Floyd claims that the packaging of the crackers was misleading because "even though the [crackers] contain butter, it contains a non-de minimis amount of butter substitutes – vegetable oils" (¶ 10).

Floyd contends that the value of the crackers was less because they contained vegetable oils and that Pepperidge Farms was able to sell the crackers at a higher price premium due to the "misleading representations and omissions" (¶¶ 28, 31). Floyd "would not have paid as much absent [Pepperidge Farm's] false and misleading statements and omissions" (¶43).

## PROCEDURAL BACKGROUND

On May 31, 2021, plaintiff Deborah Floyd ("Floyd") filed a putative class action complaint against Pepperidge Farms (Doc. 1). The complaint alleges numerous theories of liability against Pepperidge Farms as the manufacturer, distributer, marketer, labeler and seller of "Golden Butter [Crackers]" (¶ 1). Within the complaint, Floyd asserts claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, and the Magnuson Moss Warranty Act, 15 U.S.C §§ 2301, *et seq.* (pp. 8, 9). Floyd also asserts claims for breach of express warranty, breach of implied warranty of merchantability, negligent misrepresentation, fraud, and unjust enrichment (pp. 8-10).

Specifically, Floyd claims that the label and name of the crackers is misleading, because the crackers contain vegetable oils in addition to butter (¶ 10). She further

claims that the name was chosen to entice customers, who chose said crackers because they contained butter (¶ 26). Floyd asserted that customers relied on the "Golden Butter" name and that the customers would not have chosen those crackers had they known about the vegetable oils (¶ 30). She further asserted that Pepperidge Farms sold the "Golden Butter" crackers for a premium price, which they would not have been able to do without the misleading name (¶¶ 29, 31).

On October 22, 2021, Pepperidge Farm filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, along with supporting memorandum of law (Docs. 12, 12-1). Pepperidge Farms also challenges whether Floyd met the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure (Doc. 12-1, p. 12).

With respect to the 12(b)(6) grounds for dismissal, Pepperidge Farms argues that Floyd has not plausibly alleged that the "Golden Butter" name is deceptive (Doc. 12-1, p. 7). Pepperidge Farms also asserts that Floyd does not state claims for breach of warranty, negligent misrepresentation, fraud, or unjust enrichment (Doc. 12-1, pp. 12-15). Additionally, Pepperidge Farms contends that Floyd does not have standing to seek injunctive relief (Doc. 12-1, p. 15).

On October 28, 2021, Floyd filed two separate "responses" to the Pepperidge Farms motion. In the first, Floyd indicated she would file an amended complaint as of right pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure no later than November 12, 2021, which was 21 days after the motion was filed (Doc. 15). In the second, Floyd withdrew the previous response and indicated she would file opposition to motion to dismiss by November 23, 2021 (Doc. 16).

On November 10, 2021, Pepperidge Farms sought leave to file supplemental authority in support of its motion to dismiss (Doc. 18). On November 12, 2021, this Court granted said motion (Doc. 19), allowing Pepperidge Farms to submit the recent decision in a virtually identical matter, albeit in a different jurisdiction, *to wit: Kamara, et al. v. Pepperidge Farm, Inc.*, No. 1:20-cv-09012 (S.D.N.Y., Nov. 9, 2021).

In *Kamara,* Judge Castel of the Southern District of New York granted Pepperidge Farm's motion to dismiss in its entirety and denied leave to amend the complaint. This decision followed an analysis of each of count/claim, including consumer fraud and deception (under the New York Business Law), negligent misrepresentation, breach of implied warranty, breach of express warranty and Magnuson Moss warranty, fraud, and unjust enrichment. While not binding precedent, this decision and analysis is certainly persuasive authority for this Court to consider.

On November 24, 2021, Floyd filed her Memorandum in Opposition to Motion to Dismiss (Doc. 20). Within the opposition, Floyd attempted to rebut each and every one of Pepperidge Farm's assertions (*Id.*). First, Floyd contended that Pepperidge Farms conduct was in violation of the ICFA in that it could plausibly deceive a reasonable customer (pp. 2-8). Second, Floyd countered that she stated claims for breach of implied and express warranty, along with a claim under the Magnuson Moss Warranty Act ("MMWA") (pp. 9-12). Third, Floyd asserted that she adequately pled the common law claims of negligent misrepresentation, fraud, and unjust enrichment (pp. 12-13). Finally, Floyd argued that she had standing to seek injunctive relief (pp. 13-14).

Any reply should have been received before December 8, 2021; as such, this matter is ripe for review.

## LEGAL STANDARD

In addressing a motion to dismiss for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assess whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Khorrami v. Rolince*, 539 F.3d 782, 788 (7th Cir. 2008) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "Plausibility is not a symptom for probability in this context but asks for more than a sheer possibility that a defendant has acted unlawfully." *West Bend Mut. Ins. Co. v. Schumacher,* 844 F.3d 670 (7th Cir. 2016).

The Court of Appeals for the Seventh Circuit has clarified that courts must approach Rule 12(b)(6) motions by construing the complaint in the light most favorable to the non-moving party, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the non-moving party's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), cert. denied, 558 U.S. 1148 (2010) (*quoting Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Under this standard, a plaintiff who seeks to survive a motion to dismiss must go beyond "mere labels and conclusions" and "plead some facts that suggest a right of relief that is beyond speculative level." *G & S Holdings, LLC. v. Cont'l Cas. Co.*, 697 F.3d 534, 537-8 (7th Cir. 2012).

## ANALYSIS

### I.     Illinois Consumer Fraud and Deceptive Business Practices Act

#### A. Law

The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"),
prohibits "unfair or deceptive acts or practices, including … deception, fraud, false
pretense, false promise, misrepresentation or the concealment, suppression or
omission of any material fact, with the intent that others rely upon the concealment
… in the conduct of any trade or commerce." 815 ILCS 505/1, *et seq*. A claim brought
under the ICFA requires: (1) a deceptive act or practice by the defendant; (2) the
defendant intended that the plaintiff rely on the deception; (3) the deceptive act
occurred in a course of conduct involving trade or commerce; and, (4) actual damages
to the plaintiff; (5) proximately caused by the deceptive act. *Phila Indem. Ins. Co. v.
Chi. Title Ins. Co.,* 771 F.3d 391, 402 (7th Cir. 2014) (citing *DeBouse v. Bayer AG,* 235
Ill.2d 544 (2009).

The ICFA defines deceptive acts or practices as: 'including but not limited to
the use or employment of any deception, fraud, false pretense, false promise,
misrepresentation or the concealment, suppression or omission of any material fact,
with intent that others rely upon the concealment, suppression or omission of such
material fact … in the conduct of any trade or commerce. *Phillips v. DePaul Univ.,*
2014 IL App (1st) 122817, 385 Ill.Dec. 823 (Ill.App. 1st Dist. 2014).

#### B. Discussion

The first inquiry under the ICFA is whether there was a deceptive act or
practice. Floyd alleges that naming the crackers "Golden Butter" was deceptive

because is misled consumers that the crackers expected butter and not a non-de minimis amount of butter substitutes (Doc. 1, ¶¶ 4, 10). Floyd also claims that the vegetable oils "enhance the appearance" of the crackers, which is misleading because "consumers expect that the cause of the golden hue of the [crackers] is butter". (*Id.*, ¶¶ 17, 18).

Under the ICFA, "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) (citing *People ex rel. Hartigan v. Knecht Servs., Inc.*, 216 Ill.App.3d 843, 159 Ill.Dec. 318, 575 N.E.2d 1378, 1387 (1991)). Courts should look at the context of the "information made available to the plaintiff" in deciding whether a statement is deceptive. *Muir v. Playtex Prod., LLC*, 983 F. Supp. 2d 980, 987 (N.D. Ill. Nov. 6, 2013). "Courts apply a 'reasonable consumer' standard in evaluating the likelihood of deception." *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 740 (N.D. Ill. 2019) (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015)). The reasonable consumer test requires "a probability that a significant portion of the general consuming public ... acting reasonably in the circumstances, could be misled." *In re: 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 921 (N.D. Ill. 2017). Allegedly **deceptive labels** must be viewed in context, and even where a statement might be **deceptive** in isolation, it may be permissible in conjunction with clarifying language. *Id.* at 922.

The crackers were a golden color; therefore, the use of the word "golden" is descriptive and not false, misleading or fraudulent. The crackers also contained butter; therefore, the use of the word "butter" is descriptive and not false, misleading

or fraudulent. However, according to Floyd, that is the not the end of the inquiry.

Instead, the issue is not whether the crackers contained butter or the color of the cracker itself, but whether consumers were misled and deceived into thinking that butter was the sole shortening ingredient. Again, this Court thinks not. First, consumers were not deceived by representations that the crackers contained butter. It is the second ingredient on the label, behind only flour. Second, consumers were not deceived by name, "Golden Butter", as the crackers were both golden-hued and contained butter.

The Seventh Circuit has held that a statement or label cannot mislead unless it actually conveys untrue information about a product. *Bober*, 246 F.3d at 938 (statements claiming that drugs were different medications were not deceptive because "that claim [was] completely true"). Additionally, our sister district to the north has held that "[A] court may dismiss an ICFA claim at the pleading stage if the statement is 'not misleading as a matter of law.'" *Fuchs v. Menard, Inc.*, No. 17-CV-01752, 2017 WL 4339821, at *3 (N.D. Ill. Sept. 29, 2017) (quoting *Ibarrola v. Kind, LLC*, 83 F.Supp.3d 751, 756 (N.D. Ill. 2015)). There are no untruths on the packaging and there is no deception. The name and the ingredient list coalesced. There was no ambiguity that the crackers contained butter. As such, any claims brought under the ICFA are dismissed.

## II.     Breach of Express Warranty

### A.  Law

Under Illinois law, a description of goods can create an express warranty: "Any description of the goods which is made part of the basis of the bargain creates an

express warranty that the goods shall conform to the description." 810 ILCS 5/2-313. With this statutory overlay, the express warranty is a "creature of contract." *Collins Co. v. Carboline Co.*, 125 Ill.2d 498 (1988). To adequately plead a breach of express warranty, a plaintiff must allege: "(1) the terms of the warranty; (2) a breach or failure of the warranty; (3) a demand upon the defendant to perform under the terms of the warranty; (4) a failure by the defendant to do so; (5) compliance with the terms of the warranty by the plaintiff; and (6) damages measured by the terms of the warranty." *Lambert v. Dollar Gen. Corp.*, 2017 WL 2619142, at *2 (N.D. Ill. June 16, 2017).

### B. Discussion

Floyd claims that Pepperidge Farms expressly warranted that the crackers contained more butter than they did and that they did not contain butter substitutes where butter could be used (Doc. 1, ¶ 58). However, the label itself does not specify or quantify either the amount of butter or vegetable oils used in the crackers, other than the ingredient list identifying butter as the second ingredient. Floyd does not indicate that she knows the exact amount of butter used nor the amount of vegetable oils. Instead, she assumes the vegetable oil is used as a topical spray and is applied at around 8-18% of the cracker weight, which is quite a disparity (Doc. 1, ¶ 16).

Assuming there was a warranty that the crackers conformed to its description, where was the breach? The crackers contained butter and they were golden-hued as the name and label specified. Clearly, the "Golden Butter" crackers met its description; therefore, any claims for breach of express warranty are dismissed.

### III.    Breach of Implied Warrant of Merchantability

#### A. Law

Under Article 2 of the Uniform Commercial Code (UCC), as adopted by Illinois, to state a claim for breach of the implied warranty of merchantability, a plaintiff must allege that (1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect. 810 Ill. Comp. Stat. Ann. 5/2-314; *Solvay USA v. Cutting Edge Fabrications, Inc.,* 521 F.Supp.3d 718, 725 (N.D.Ill. Feb. 22, 2021). To be merchantable, the goods must "pass without objection in the trade under the contract description" and must be "fit for the ordinary purposes for which such goods are used." *Id.*

"While the Federal Rules of Civil Procedure allow for liberal notice pleading, conclusory allegations regarding the [good's] merchantability and fitness are not sufficient to state a claim for breach of implied warranty of merchantability absent some factual support." *Id.* (citing *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985) (holding that "bare legal conclusions" are insufficient to survive a 12(b)(6) motion where a plaintiff failed to include factual allegations in support of the elements of a claim)).

#### B. Discussion

Floyd alleges that Pepperidge Farms "impliedly warranted … that [the crackers] contained more butter than it did and did not contain butter substituted where butter could be used" (Doc. 1, ¶ 58). However, there are no representations on the label as to any specific amount of butter contained within the crackers.

Furthermore, Floyd's allegations carry zero weight in that the Pepperidge Farm label for the "Golden Butter" [Crackers] cannot reasonably be read to promise that the only shortening agent in the crackers is butter. Notwithstanding the foregoing, there is no merit whatsoever to any potential argument that the crackers were not merchantable at the time of sale. Floyd purchased what was promised – crackers that contained butter and were golden-hued. Clearly the box did not contain purple crackers that were made without butter. In light of the foregoing, any claims of implied warranty of merchantability are dismissed.

## IV.    Magnuson Moss Warranty Act

### A. Law

The Magnuson Moss Warranty Act ("MMWA") is a remedial statute designed to protect consumers against deceptive warranty practices. *Skelton v. Gen. Motors Corp.,* 660 F.2d 311, 313 (7th Cir. 1981); *Anderson v. Gulf Stream Coach, Inc.,* 662 F.3d 775, 782 (7th Cir. 2011). It provides a federal private cause of action for a warrantor's failure to comply with the terms of a "written warranty, implied warranty or service contract." *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 522 (7th Cir.2003) (quoting 15 U.S.C. § 2310(d)(1)). In claims brought under the MMWA, state law governs the creation of implied warranties. *Voelker,* 353 F.3d at 525. The Act does not create implied warranties, but instead confers federal court jurisdiction for state law breach of implied warranty claims. See *Gardynski–Leschuck v. Ford Motor Co.,* 142 F.3d 955, 956 (7th Cir.1998); see also *Schimmer v. Jaguar Cars,* 384 F.3d 402, 405 (7th Cir.2004) (MMWA "allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action.").

**B. Discussion**

Floyd asserts her claims for breach of express warranty, implied warranty of merchantability and MMWA in the same section. Since Illinois law prevails and this Court has dismissed both the express and implied warranties for failing to properly allege a state law claim, any MMWA counts are dismissed as well. See *Schiesser v. Ford Motor Co.,* No. 16 CV 730, 2016 WL 6395457 at *4 (N.D. Ill. Oct. 28, 2016).

**V.    Negligent Misrepresentation**

**A. Law**

The elements of a claim of negligent misrepresentation are: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information. *Garner v. Johnson & Johnson, Janssen Research and Development LLC*, 2017 WL 6945335 (C.D. Ill. Sept. 6, 2017) *citing First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 334–35 (Ill. 2006).

**B. Discussion**

Floyd claims that Pepperidge Farms had a duty to truthfully represent the [crackers], and that it breached that duty (Doc. 1, ¶ 65). Throughout the complaint, Floyd has asserted that the label/name "Golden Butter" is misleading to consumers in numerous ways, from assuming that butter is the sole shortening ingredient to assuming that the color is enhanced from the spray-on vegetable oils. Although Floyd

does not specify in this section what she claims are the untruths, it is irrelevant as the crackers are made with butter and are golden-hued. At this point, the Court feels like a scratched record repeating the phrase "there was nothing false, misleading or deceptive on the label"; therefore, any claims of negligent misrepresentation are dismissed.

It is not plausible than Floyd can prevail on any such claim of negligent misrepresentation as there are no fallacies in the label. Moreover, Floyd's negligent misrepresentation claim would also fail under the economic loss doctrine as she only seeks monetary damages[1]. While there are exceptions to the doctrine, one of which applies "where the plaintiff's damages are proximately caused by a negligent misrepresentation in the business of supplying information for the guidance of others in their business transactions", it is a question of law whether an exception applies and this Court is not inclined to do so. See *Catalan v. GMAC Mortg. Corp.,* 629 F.3d 676, 692 (7th Cir. 2011); *Gondeck v. A Clear Title and Escrow Exchange, LLC,* 47 F. Supp. 729, 749 (N.D. Ill. June 9, 2014).

## VI.   Fraud

### A. Law

Heightened pleading requirements apply to complaints alleging fraud. Federal Rule of Civil Procedure 9(b) provides that a party alleging fraud or mistake

---

[1] The case from which the economic loss doctrine takes its name in Illinois, *Moorman Manufacturing Company v. National Tank Company,* defines "economic loss" as monetary loss "without any claim of personal injury or damage to other property," and observes that "where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, ... the courts have adhered to the rule that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery," 91 Ill.2d 69 (1982)

"must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." This generally means "describing the 'who, what, when, where, and how' of the fraud." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011).

### B. Discussion

Floyd claims that Pepperidge Farms "misrepresented and/or omitted the attributes and qualities of the products" because the product was "not as advertised" (Doc. 1, ¶¶ 70-71). However, how where the crackers misrepresented? Moreover, how were the crackers not as advertised? They contained butter and they were a golden hue? Yet again, plaintiff has fallen short and has failed to assert sufficient facts to show that her claim for fraud is plausible. Therefore, this claim is dismissed.

## VII.   Unjust Enrichment

### A. Law

"To state a claim for unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Stefanski v. City of Chicago*, 390 Ill.Dec. 314, 28 N.E.3d 967, 980 (Ill. App. Ct. 2015)

### B. Discussion

Floyd alleges that Pepperidge Farms "obtained benefits and monies because the Product was not as represented and expected" (Doc. 1, ¶ 72). To the contrary, the crackers were as represented. They contained butter and they were golden-hued. Because her claim is predicated on the same allegations as asserted under the ICFA

and express warranty claims, it too must fail. *Spector v. Mondelēz International, Inc.*, 178 F. Supp. 3d 657, 674. Indeed, plaintiff's unjust enrichment claim "will stand or fail" with related claims of "the same [alleged] improper conduct". *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).

## VIII.  Standing – Injunctive Relief

### A. Law

To have standing to pursue injunctive relief, Floyd must show that she faces—going *forward*—a "real and immediate threat of future injury" from Pepperidge Farm's actions. *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). The equitable remedy of injunctive relief "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again ....". *Lyons*, 461 U.S. at 111.

### B. Discussion

No one doubts that Floyd has standing to pursue monetary damages, but she also seeks injunctive relief against Pepperidge Farm's alleged false advertising. The problem is that Article III standing for one does not automatically cover the other: "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citing *Lyons*, 461 U.S. at 109, and describing the holding of that case as "notwithstanding the fact that plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief").

Here, Floyd seeks injunctive relief against Pepperidge Farm's advertising practices under various theories of liability (Doc. 1). In challenging her standing to pursue injunctive relief, Pepperidge Farms argues that Floyd is now aware that vegetable oil is in the crackers, so she cannot be harmed in the future (Doc. 12-1). This is true.

Floyd cites to two district court cases to support her contention that standing exists, but both are inapplicable to this case. See *Le v. Kohl's Dep't Stores, Inc.,* 160 F.Supp.3d 1096 (E.D. Wis. 2016) and *Leiner v. Johnson & Johnson Consumer Cos., Inc.,* 215 F.Supp.3d 670 (N.D. Ill. 2016). *Le* involved a company-wide complaint against Kohls for pervasive and continuous false advertising, as opposed to one of Pepperidge Farm's products. 160 F.Supp.3d at 1110.  *Leiner*, too, involved claims against a company alleging that they falsely advertised their product**s** as "clinically proven" to help babies sleep. 215 F.Supp.3d at 673. *Leiner* also unsuccessfully raised public policy concerns as to whether injunctive-relief provisions for consumer-protection statutes could ever be invoked to enjoin deceptive practices if the complaining consumer's standing dissipated when she discovered the deception. In dismissing her claims for injunctive relief, the court reminded her that Article III standing was a requirement for federal-court subject matter jurisdiction. Similarly, Floyd's claim for injunctive relief is denied, but she is not precluded or constrained from seeking injunctive relief in state court.

## CONCLUSION

For the reasons set forth above, and because Floyd has failed to plausibly allege any cause of action, defendant Pepperidge Farm, Incorporated's motion to dismiss is

**GRANTED** in its entirety. Floyd's putative class action complaint is dismissed without prejudice and any potential motion for class certification is moot at this time.

Although this Court is reticent to do so, a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana,* 786 F.3d 510 (7th Cir. 2015). Therefore, Floyd is granted 30 days, or until February 23, 2022 file an amended complaint, if she can do so consistent with Rule 11 of the Federal Rules of Civil Procedure. If no amended complaint is filed on or before February 23, 2022, the Court will enter final judgment and close the case.   If Floyd files an amended complaint, Pepperidge Farms will have 30 days from that date to file a responsive pleading.

**IT IS SO ORDERED.**

**DATED: <u>January 24, 2022</u>**

<u>s/ Stephen P. McGlynn</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**